IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **HERMAN RICH, and** ) | |
| **SHABAZZ MUHAMMAD,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| V. ) | Civil No. **03-152-JPG** |
| ) | |
| **TOM MAUE, et al.,** ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

Pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), this Court makes the following Report and Recommendation regarding defendant Doughty's motion to dismiss **(Doc. 66)**, plaintiffs Rich and Muhammad's motion to stay ruling on Doughty's motion to dismiss **(Doc. 69)**, and defendants Gales and McAdory's motion for summary judgment **(Doc. 71)**. Because these three motions are so closely related, a single report and recommendation is being issued.

The above-captioned civil rights case was filed by Herman Rich and Shabazz Muhammad, who at all relevant times were incarcerated at Menard Correctional Center. **(Doc. 1).** The plaintiffs allege that the disciplinary segregation unit (C-wing) at Menard is unsanitary, and that as a result they were bitten by mice. The complaint contains an Eighth Amendment "conditions of confinement" claim, a parallel state law negligence claim, and an Eighth Amendment claim that doctors failed to treat the plaintiffs for their infected mice bites. **(*See* Doc. 10).**

1

Three of the seven named defendants, Tom Maue, Martin Spiller and Jonathan Walls, were previously granted summary judgment relative to the conditions of confinement claim because plaintiffs failed to exhaust administrative remedies.  **(Doc. 64).**  The Court found that the plaintiffs had not properly pursued their "emergency" grievance through the entire administrative process, and they had not pursued a regular grievance, meaning that prior to filing this action they had not exhausted *all* administrative remedies available to them, as required by 42 U.S.C. § 1997e(a).  Defendants McAdory and Gales, the only defendants remaining in Count 1, the conditions of confinement claim, have now filed their own motion for summary judgment, asserting plaintiffs failed to exhaust administrative remedies. **(Doc. 71).**  Defendant Doughty has moved to dismiss Count 3, the medical care claim, also alleging the plaintiffs failed to exhaust administrative remedies. **(Doc. 66).**   Each plaintiff's claim is viewed separately, as is each defendant's liability, although the legal analysis is identical.  ***See generally Boribourne v. Berge*, 391 F.3d 852 (2004);  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983); and 42 U.S.C. § 1983.**

### Plaintiffs' Motion to Stay Ruling on Doughty's Motion

Plaintiffs have filed a joint motion to stay ruling on defendant Doughty's motion to dismiss.  **(Doc. 69).**  Plaintiffs want the Court consider defendant Doughty's motion at the same time as the similar motion plaintiffs surmised would be filed by defendants McAdory and Gales. Defendant Doughty objected to having his fate delayed and tied to what McAdory and Gales did or did not file.  **(Doc. 70).**  Obviously, plaintiffs' motion to stay **(Doc. 69)** is moot, since McAdory and Gales did file a motion for summary judgment based on the exhaustion requirement, and the Court is considering all three defendants' motions together.

### The Proper Procedural Mechanism

Rather than file an answer, pursuant to Federal Rule of Civil Procedure 12(b), defendant Doughty filed a motion to dismiss. However, Doughty recognized that Rule 12(b) provides that if a motion to dismiss is filed which includes matters outside the pleadings, "the motion shall be treated as one for summary judgment as disposed of as provided in Rule 56, and all parties shall be given an opportunity to present all material made pertinent to such motion by Rule 56." Defendants McAdory and Gales filed their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, even though they had not filed an answer or other responsive pleading– presumably because they submitted matters outside the pleadings for the Court to review. In such a situation, the proper procedural mechanism is actually Rule 12(b), while the standard of review changes to the standard utilized in ruling on motions for summary judgment under Rule 56.

In any event, the Court is forwarding a notice regarding the treatment of defendant Doughty's Rule 12(b) motion to dismiss **(Doc. 66)** into a Rule 56 motion for summary judgment to ensure plaintiffs are aware that the Rule 56 standard will apply to Doughty's motion. The motion for summary judgment filed by defendants McAdory and Gales **(Doc. 71)** will also be determined pursuant to Rule 56. In general, summary judgment is appropriate under Rule 56 where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c);** *see also Celotex Corp. v. Catrett*, **477 U.S. 317 (1986).**

3

**Failure to Exhaust Administrative Remedies**

The Court of Appeals for the Seventh Circuit held in *Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999), that exhaustion of administrative remedies, while not jurisdictional per se, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. Exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. *See* **42 U.S.C. § 1997e(a);** *Perez***, 182 F.3d at 534-37; and** *Booth v. Churner***, 532 U.S. 731, 739 (2001).**

The complaint was filed on March 6, 2003. **(Doc. 1).** Count 1, the conditions of confinement claim, pertains to an alleged on-going situation, beginning in late 2002 when plaintiffs Rich and Muhammad were moved into the disciplinary segregation unit. **(Doc. 1, pp. 5-5a).** Count 3, the medical care claim, pertains in pertinent part to Dr. Doughty's treatment of plaintiff Rich on December 11, 2002, and his treatment of plaintiff Muhammad on January 14, 2003. **(Doc. 1, pp. 5h-5i).** Therefore, available administrative remedies must have been properly exhausted before March 6, 2003.

"Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." *Massey v. Helman***, 196 F.3d 727, 735 (7th Cir. 2000).** The grievance procedures applicable to the Illinois Department of Corrections are set forth under Title 20 of the Illinois Administrative Code, Sections 504.800–504.850**.**

Under standard grievance procedures, a grievance must be initiated within 60 days after

the incident is discovered. Basically, an inmate first takes his complaint to a correctional counselor; if this does not resolve the problem, he is to file a written grievance on an institutional form, which is then reviewed by a designated grievance officer. The grievance officer reports his or her findings and recommendations to the chief administrative officer, i.e., the warden, and the warden advises the inmate of the institutional decision.

In an emergency, an inmate may send his grievance directly to the warden. The procedure is as follows:

> Section 504.840 Emergency Procedures
>
> A committed person may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer [i.e., the warden].
>
> a) If the Chief Administrative Officer determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the committed person, the grievance shall be handled on an emergency basis.
>
> b) The Chief Administrative Officer shall respond to the committed person within 3 days after receipt of the grievance, whenever possible, indicating what action shall be or has been taken.

**20 Ill.Adm.Code § 504.840.**

The inmate may appeal the warden's disposition of the grievance in writing to the director of the Department of Corrections within 30 days of the warden's decision. The director reviews the grievance and the response(s), and determines whether the grievance requires a hearing before the Administrative Review Board. If it is determined that the grievance is meritless or can be resolved without a hearing, the director will issue a final decision; otherwise, the grievance is referred to the Administrative Review Board, which may hold hearings and examine witnesses. The Board submits a written report of its findings and recommendations

back to the director, who than makes a final determination. When an emergency grievance is appealed, the Administrative Review Board is supposed to expedite review.

The complaint generally asserts: "Each plaintiff filed a written grievance through all appropriate steps available to them." **(Doc. 1, p. 3).**  However, plaintiffs further explain: "officials of the Illinois Department of Corrections deliberately sabotaged the completion of this process by refusing to answer plaintiffs' grievances at one level or another which effectively ('and by design') presented prison officials with excuses to not hear the grievances on the next level." **(Doc. 1, p. 5j).**  The plaintiffs generally adhere to that position in their respective responses to McAdory and Gales' motion for summary judgment, and Doughty's motion to dismiss.  **(*See* Docs. 77, 79, 82 and 84).**  Rich and Muhammad do not contend that they utilized the standard grievance procedure; rather, they submitted emergency grievances regarding both the conditions of confinement and their respective medical care.  **(*See* Docs. 77, 79, 82 and 84).**

### 1.  Count 1: Conditions of Confinement

On December 11, 2002, plaintiff Rich sent a grievance to his counselor regarding the conditions of his confinement.  **(Doc. 1, Group Exhibit 3; and Doc. 72, Exhibit A).**  Rich's counselor responded on December 16, 2002. **(Doc. 72, Exhibit A).**  According to Rich, on December 11, 2002, he also forwarded an "emergency grievance to the warden, but no response was received; after 21 days passed, he "appealed" his "Emergency Grievance Gone Unanswered" to the Administrative Review Board on January 2, 2003, to no avail. **(*See* Doc. 1, Exhibit 3; and Doc. 72, Exhibit A).**  On January 28, 2003, the Administrative Review Board returned the grievance to plaintiff, indicating that the proper grievance report, grievance officer's response and chief administrative officer's response all had to be submitted. **(Doc. 1, Group**

**Exhibit 3; and Doc. 72, Exhibit A).** The December 11, 2002, grievance is stamped "received" by the Grievance Office April 16, 2004[1], and on April 22, 2004, it was deemed *not* to be an emergency by warden McAdory. **(Doc. 72, Exhibit A).** According to the affidavit of Douglas A. Cravens, chairperson of the Administrative Review Board, the Board's records do not contain any grievance from Rich. **(Doc. 72, Exhibit B).**

Plaintiff Muhammad purportedly submitted an emergency grievance to Warden McAdory on January 14, 2003. **(Doc. 1, Exhibit 3).** On January 28, 2003, the Administrative Review Board received Muhammad's grievance, and it was returned the next day with instructions to follow the emergency grievance procedures, and notations indicating plaintiff had failed to submit the grievance report, including the counselor's response, grievance officer's response and chief administrator's response. **(Doc. 1, Exhibit 3).** According to the affidavit of Douglas A. Cravens, chairperson of the Administrative Review Board, the Board's records do not contain any grievance from Rich. **(Doc. 72, Exhibit B).**

Insofar as the plaintiffs' grievances were submitted as "emergency" grievances, the applicable regulation provides for a decision from the warden on an emergency grievance within three days "whenever possible." **20 Ill. Admin. Code § 504.840.** Therefore, any failure by the warden to rule within three days does not allow the plaintiffs to proceed directly to the Administrative review Board. Thus, the Administrative Review Board correctly returned the plaintiffs' premature appeals. Plaintiff Rich's attempt to present his grievance to the Grievance Office and Warden McAdory in 2004 does not help him, as the complaint was filed March 6, 2003. Put more succinctly, the plaintiffs may have "touched all the bases, but they did not do so

---

[1]The exact day is difficult to read, but of little import to the issues before the Court.

in the proper order.

The plaintiffs' reliance on *Lewis v. Washington*, 300 F.3d 829 (7th Cir. 2002), is misplaced.  In *Lewis* the prisoner-plaintiff argued that he was not required to exhaust administrative remedies because the prison officials' failure to respond to many of his grievances and requests rendered those remedies unavailable. The Court of Appeals for the Seventh Circuit agreed that only those administrative remedies that are available need be exhausted, and that indefinite delays by prison officials in responding to grievances could render them unavailable remedies. ***Lewis*, 300 F.3d at 833.**  As the District Court noted relative to defendants Tom Maue, Martin Spiller and Jonathan Walls, the standard grievance procedure remained open to plaintiffs, so even if the emergency procedure was blocked due to the warden's inaction, another avenue of relief remained available, which the plaintiffs did not exhaust prior to filing suit.  **(*See* Doc. 64).**

With respect to the plaintiffs' beliefs, or their being misinformed, that there were no grievance officers available, this argument does not change the fact that they did not pursue their emergency grievance in the proper sequence, nor does it address the fact that they filed suit before exhausting any administrative remedy.  To the contrary, the affidavit of Douglas Cravens, when read with the understanding that procedurally insufficient appeals are returned to the inmate, supports the defendants' position that no proper appeal was lodged with the Administrative Review Board.  **(*See* Doc. 72, Exhibit C).**  Furthermore, the affidavit of William Spiller clarifies that a grievance officer did retire at the end of December 2002, but a replacement grievance officer was trained and in place, as well as a second grievance officer, and 589 grievances were processed during the relevant December 2002 and January 2003 period. **(Doc. 72, Exhibit C).** Therefore, there were avenues available to plaintiffs that were not

exhausted.

Plaintiff Muhammad asserts that questions of fact remain which preclude summary judgment. For example, Muhammad notes that Craven's affidavit states that "No grievances pertaining to this issue was [sic] found," which does not mean that none were lodged. However, a genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties" (***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247(1986))**, or by "some metaphysical doubt as to the material facts, (***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))**."

Therefore, defendants McAdory and Gales, like co-defendants Maue, Spiller and Walls, are entitled to summary judgment as to Count 1, the conditions of confinement claim, due to the plaintiffs' failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

**2.  Count 3: Medical Care**

The complaint was filed on March 6, 2003. **(Doc. 1).** Count 3, the medical care claim, pertains in pertinent part to Dr. Doughty's treatment of plaintiff Rich on December 11, 2002, and his treatment of plaintiff Muhammad on January 14, 2003. **(Doc. 1, pp. 5h-5i).** Therefore, available administrative remedies must have been properly exhausted before March 6, 2003.

There is simply no evidence before the Court of either plaintiff filing a grievance specific to Dr. Doughty, or medical care in general. **(*See* Doc. 1, Exhibit 3; and Docs. 77 and 82).** To the contrary, the affidavit of Douglas A. Cravens, chairman of the Administrative Review Board, indicates that no grievances regarding the failure to provide medical care were found in the Board's records. **(Doc. 66, Exhibit A).** The Board is the final step in the administrative process,

and any grievance that is received that does not evidence that the procedural prerequisites have been met is returned to the inmate. (*See* **Doc. 66, Exhibit A).**

This Court does note that *former* co-plaintiff Glenn Smith did specifically mention medical care in his grievance, but that is irrelevant to whether plaintiffs Rich and Muhammad exhausted their respective administrative remedies.

Insofar as one might be inclined to construe the plaintiffs' grievances regarding the conditions of their confinement and sanitation concerns as implicating medical care, in light of the fact each claimed to have been bitten by a mouse, then, for the reasons set forth above in relation to Count 1, the plaintiffs have failed to exhaust administrative remedies in the prescribed manner. Therefore, defendant Doughty is entitled to summary judgment as to Count 3, the medical care claim, due to the plaintiffs' failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

### 3. Count 2: State Law Negligence

Count 2 asserts a pendant state law negligence claim similar to Count 1, the conditions of confinement claim. ***See* 28 U.S.C. § 1367(a) (regarding supplemental jurisdiction).** If the District Court adopts this report and recommendation and grants summary judgment to the defendants on Counts 1 and 3, then no federal claims would remain. In determining whether to adjudicate the remaining pendant claim, the Court must choose the course that "best serves the principles of economy, convenience, fairness and comity which underlie the pendent jurisdiction doctrine." ***Carnegie-Melon University v. Cohill*, 484 U.S. 343, 357 (1988);** *see also* ***Centres, Inc. v. Town of Brookfield, Wis.*, 148 F.3d 699, 704 (7th Cir. 1998); and 28 U.S.C. § 1367(c)(3) (regarding retention of supplemental jurisdiction).**

Dismissal of the federal claims due to the plaintiffs' failure to exhaust is an added consideration. Having failed to meet the preconditions for jurisdiction on Counts 1 and 3, the Court's supplemental jurisdiction rests on even shakier ground. Obviously, economy and convenience weigh in favor of exercising supplemental jurisdiction. However, comity tips the scale in favor of letting the state court rule on state law issues. Therefore, this Court recommends that Count 2 be dismissed in the event the Court dismisses Counts 1 and 3.

### Recommendation

For the aforementioned reasons, this Court recommends that: (1) the plaintiffs' motion to stay ruling on defendant Doughty's motion to dismiss **(Doc. 69)** should be denied; (2) defendants Gales and McAdory's motion for summary judgment on Count 1 **(Doc. 71)** be granted due to the plaintiffs' failures to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a); (3) defendant Doughty's motion to dismiss Count 3 **(Doc. 66)** be granted due to the plaintiffs' failures to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a); (4) the Court decline to exercise supplemental jurisdiction over Count 2, a pendant state law negligence claim similar to Count 1; and (5) final judgment be entered as all claims against all defendants would have been determined. Insofar as Counts 1 and 2 were disposed of on exhaustion grounds, dismissal of those claims would be without prejudice.

**SUBMITTED: February 14, 2006**

  s/ Clifford J. Proud  
**CLIFFORD J. PROUD**  
**U. S. MAGISTRATE JUDGE**

### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(e), the

11

parties shall file any objections to this report and recommendation on or before **March 6, 2006**.

### Notice Regarding Application of Federal Rule of Civil Procedure 56

Before the Court are defendant Doughty's motion to dismiss **(Doc. 66)**, and defendants Gales and McAdory's motion for summary judgment **(Doc. 71)**. Because plaintiffs are proceeding pro se, they must be notified of the consequences if they fail to adequately respond to the motion.  *Lewis v. Faulkner*, **689 F.2d 100, 102 (7th Cir. 1982).**

Plaintiffs are hereby NOTIFIED that any fact asserted in the materials submitted with the aforementioned motions will be accepted by the Court as being true unless plaintiffs submit their own affidavits or other documents controverting the assertions or otherwise raising a question of fact which would preclude summary judgment.

Rule 56 of the Federal Rules of Civil Procedure states:

**Rule 56. Summary Judgment**

**(a) For Claimant.** A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

**(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**(c) Motion and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**(d) Case Not Fully Adjudicated on Motion.** If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make

an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

**(e) Form of Affidavits; Further Testimony; Defense Required.** Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

**(g) Affidavits Made in Bad Faith.** Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Plaintiffs are DIRECTED to review Rule 56 and are ADVISED that a failure to respond to the defendants' motions with affidavits or other evidence might be fatal to their respective claims.